## CHAMBERS v. RAWLS.

(Court of Civil Appeals of Texas. El Paso. June 12, 1913. Rehearing Denied June 26, 1913.)

1. PUBLIC LANDS (§ 178*)—LANDS OF STATE —TRANSFER.

Where school land was awarded by the Commissioner of the General Land Office to J. as an actual settler on December 8, 1906, and on December 30, 1907, he conveyed to C., and both complied with the law relative to occupancy, the Commissioner by refusing to file the affidavit of transfer and obligations of C. in the General Land Office could not impair C.'s rights in the property nor lawfully forfeit the same and award the land to another.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

2. PUBLIC LANDS (§ 178*)—SCHOOL LANDS— SETTLER'S RIGHTS—TRANSFER.

Where the State Land Commissioner refused to file an affidavit of transfer of a purchaser's interest in school land together with the transferee's obligations, the latter was not required to institute proceedings to compel the filing of the papers, since the validity of the transfer did not depend on the retention and filing of the transfer documents by the Land Commissioner.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

3. PUBLIC LANDS (§ 178*)—LANDS OF STATE— SCHOOL LAND—OCCUPANCY—TERMINATION.

The death of a transferee of school land entry dispensed with further occupancy.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

4. PUBLIC LANDS (§ 178*)—LANDS OF STATE —TRANSFER—OCCUPANCY—MATURITY.

It is not necessary to the validity of a transfer of a purchaser's interest in school land that it be effected after the maturity of occupation.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

5. PUBLIC LANDS (§ 179*)—LANDS OF STATE—RESIDENCE—EVIDENCE.

Where, in trespass to try title to a boundary of school land, the controlling issue was the place of residence of an entryman and his transferee, evidence as to "where they resided" during the time they were owners of the premises was incompetent as a conclusion.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 583; Dec. Dig. § 179.*]

6. APPEAL AND ERROR (§ 934*) — FINDINGS — PRESUMPTION—REVIEW.

Rev. Civ. St. 1911, art. 1985, provides that, on appeal or writ of error, an issue not submitted or requested by a party to the cause shall be deemed as found by the court in such manner as to support the judgment, provided there be evidence to sustain such finding. Held, that where it appeared that in 1884 a transferee of certain school land married A., and they lived together as man and wife until the transferee's death in 1908, and he recognized as his own children born to A., it would be presumed that his prior marriage to another woman had been dissolved by divorce, and that the second marriage was valid and the children begotten their lawful heirs, in order to support a judgment sustaining a title derived from them.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3777; Dec. Dig. § 934.*] ·

7. JUDGMENT (§ 250*) — CONFORMITY TO PLEADING—TRESPASS TO TRY TITLE.

· Where, in trespass to try title, plaintiff pleaded his title specially, and averred that he claimed under the heirs of C., and it appeared that the premises belonged to the community estate of C. and his wife, she taking half of the property in her own right, and not as heir of her husband, plaintiff was restricted to the title pleaded, and was therefore only entitled to recover a half interest in the title, together with exclusive possession of the whole.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 436; Dec. Dig. § 250.*]

Appeal from District Court, Presidio County; W. C. Douglas, Judge.

Trespass to try title by T. H. Rawls against B. L. Chambers. Judgment for plaintiff, and defendant appeals. Affirmed.

J. D. Martin, of Alpine, and T. A. Falvey, of El Paso, for appellant. J. A. Gillett, Hudspeth, Dale & McDonald, and P. H. Clarke, all of El Paso, for appellee.

HIGGINS, J. This is an action of trespass to try title by the appellee for recovery of four sections of free school land in Presidio county, filed May 28, 1912. The premises were sold and awarded by the Commissioner of the General Land Office to Moses Jiner, as an actual settler, on December 8, 1906. By deed dated December 30, 1907, Jiner conveyed the same to Salvador Chavira. The conveyance was duly recorded and forwarded by the vendee to the Commissioner of the General Land Office, together with his affidavit and purchase-money obligations, for filing and substitution as purchaser direct from the state, as provided by article 5436, Revised Statutes of 1911, and article 4218k, Revised Statutes of 1895. These documents were received by the Commissioner on January 4, 1908, and he thereupon filed in his office the conveyance but refused to file the other papers, and on February 18, 1908, returned the affidavit and substitute obligations to Chavira. On February 17, 1908, the Commissioner canceled the sale and award of the land to Jiner for alleged failure to settle upon, occupy, and improve same, as by law required, and indorsed such act of forfeiture upon Jiner's obligations, as provided by articles 5423–5425, Revised Statutes of 1911. Chavira died November 19, 1908, and on August 9, 1911, an affidavit to that effect, in due form, was filed in the General Land Office. No legal action was ever taken by Chavira to compel the Land Commissioner to reinstate the sale to Jiner or to compel him to retain and file the affidavit and substitute obligations aforesaid. In the year 1910 Aniseta Chavira, surviving wife, and the children and heirs of Salvador conveyed the premises to R. R. Smith, who, in turn, conveyed same to appellee by deed dated May 10, 1911. After the forfeiture of the sale to Jiner, the lands were reappraised and placed upon the market by the Land Commissioner, and on March 29, 1912, same were awarded by him to appellant upon his applications to purchase filed February 8, 1912. The cause was submitted upon special issues, and the jury found that Jiner had settled and lived upon the land, as required by law, until his conveyance to Chavira, and that Chavira settled and lived upon the same, as by law required, from the date of his purchase from Jiner until his death, and upon these findings judgment was rendered in appellee's favor for an undivided one-half interest in the premises; the same being the interest which had been conveyed by the children and heirs of Salvador.

[1] Appellant submits that under the provision of article 5436 a vendee of the original purchaser of free school land, in order to acquire title thereto, must be substituted as a purchaser direct from the state by the Commissioner of the General Land Office, and that since Chavira's affidavit and obligations were not accepted and filed by the Land Commissioner he was therefore never substituted for Jiner, and had no title. In Payne v. Cox, 143 S. W. 336, it was held that the vendee of the original purchaser who bought prior to the expiration· of the three years' occupancy need not file his transfer, affidavit, and substitute obligations in the General Land Office; that, if he in fact complied with the law relative to occupancy and improvements, he acquired title, notwithstanding his failure to have himself substituted. Under the view which we have of the law, it is unnecessary for us to pass upon the question decided in that case, and for the purpose of this case it may be conceded that the statute does require substitution when the required occupancy has not been completed, and that third persons as distinguished from the state may properly raise the question and

avail themselves of the consequences of such failure. In the instant case the jury by its finding has affirmatively established that Jiner and Chavira both complied with the law relative to occupancy. Unless there had, in fact, been a failure to so occupy, the Commissioner was without authority to forfeit upon that ground; and, the jury having found that there was no such failure, the attempted act of forfeiture had no force or effect whatever. Johnson v. Bibb, 32 Tex. Civ. App. 471, 75 S. W. 71. This being true, Jiner had all of the rights granted him by law as the lawful original purchaser of the land, and Chavira as a lawful vendee had all of the rights and privileges granted by law to such vendee. Jiner, under article 5436, had the right to sell, and Chavira, as its purchaser, had the right, and it was his duty, to file his transfer in the General Land Office, together with his affidavit and purchase-money obligations, and thereby become the substituted purchaser direct from the state, and it was the duty of the Commissioner (article 5449, Revised Statutes of 1911) to retain the same as a record of his office. It was the law that gave Jiner and Chavira these rights, and the Land Commissioner was wholly without authority to destroy or impair the same, and their rights were in no wise dependent upon the Land Commissioner performing the duty of filing the instruments as a record of his office. The transfer, affidavit, and obligations were forwarded by Chavira to the Land Commissioner and by him received. The transfer was retained and filed, but the affidavit and obligations, as stated, returned, with advice that same were returned because they could serve no useful purpose in the Land Office since the sale to Jiner had been forfeited. The right of substitution being one given and granted by the law, and the parties having performed all of the acts prescribed by law necessary to effect the substitution, it must be held that the same was effected. Metzler v. Johnson, 1 Tex. Civ. App. 137, 20 S. W. 1116; Watts v. Wheeler, 10 Tex. Civ. App. 117, 30 S. W. 297. The Land Commissioner was vested with no discretion in the matter, and the only effect of his wrongful refusal to retain and file the affidavit and obligations is that there is not now in the Land Office the proper evidence which should be there of the substitution which had, in fact, been effected. By his failure to retain and file these instruments, proper records and archives of his department are missing, but this cannot and does not alter the fact that a substitution was made, and the rights of the parties are in no wise affected by the fact that the proper evidence thereof is not in the proper department.

[2] It is suggested that Chavira should have taken steps to compel the Commissioner to retain and file the papers. Waiving the question of whether any adequate remedy exists by which the Commissioner could have been compelled so to do, it is a sufficient answer to the suggestion to merely repeat that the right of substitution was not dependent upon his retaining and filing the documents, and hence no necessity for Chavira to take any steps to compel him to do so. It is further suggested that Rawls cannot recover and has no title to the land because he has never been substituted as a purchaser from the state, and as a matter of fact could not become a substitute purchaser because he has recovered only an undivided one-half interest in the land and the right of substitution as to such one-half interest does not exist.

[3, 4] The death of Chavira dispensed with further occupancy, and, as intimated above, it is not necessary that a substitution be effected after the maturity of the occupancy. Taylor v. Burke, 66 Tex. 643, 1 S. W. 910. Prior to the completion of the three years' occupancy, it may with some degree of plausibility be urged that not only are occupancy and improvement required, but the filing of the statutory affidavit of the substitute purchaser as well, guarding against collusion and fraud, but these considerations do not apply where the occupancy has been completed and improvements made, since the inchoate right of the purchaser prior to the completion of the three years then ripens into a full and complete equitable title.

What has been said disposes of all the various contentions predicated upon the theory that there was no privity between the state and Chavira, and that there is none between the state and Rawls. We are referred to the Acts of 1905 (articles 5458–5459, Revised Statutes of 1911), and various decisions of our Supreme Court construing the same, but we are unable to perceive the applicability in any respect of the statute and authorities cited, under the facts disclosed by this record.

[5] Upon the trial certain witnesses by depositions testified where Jiner and Chavira resided during the time they were the owners of the premises in controversy; their answers to the interrogatories propounded being that they lived in the town of Marfa. To the answers of the witnesses it was objected that the same was a conclusion, and the objection was sustained. Ordinarily there would be no objection to a witness being permitted to state where a party's residence was; but, where the controlling and decisive issue in the case is the place of residence, then necessarily to permit a witness to so testify would be to permit him to state his own conclusion as to the very issue which it was the duty of the jury to decide, and the court properly excluded the answers.

[6] It appears from the evidence, and in response to a special issue submitted, the jury found that prior to his marriage with Aniseta the said Salvador had married one Petra Mata, who, it also appears, was living at the time of trial. The question of whether or not there had been a dissolution of this

prior marriage, therefore, became a material inquiry, but no issue in this respect was submitted to the jury, and no such submission was requested. No evidence was offered to show that there had been no divorce.

Upon special verdict an issue not submitted and not requested to be submitted is governed by article 1985, Revised Statutes of 1911, which provides that: "Upon appeal or writ of error, an issue not submitted and not requested by a party to the cause, shall be deemed as found by the court in such manner as to support the judgment; provided, there be evidence to sustain such a finding." It appears that about 1884, which was some years after the separation of Salvador and Petra, Aniseta and Salvador were married in due form by a Catholic priest, and that they lived together as man and wife until Salvador's death in 1908, and that he recognized as his own the children born of Aniseta. Under such circumstances, the presumption is that the prior marriage of Salvador and Petra had been dissolved by divorce, and that the second marriage was valid and the children begotten by the parties their lawful heirs. If there had been no divorce, the burden of proving this negative fact was upon appellant. Carroll v. Carroll, 20 Tex. 732; Nixon v. Wichita Land & Cattle Co., 84 Tex. 408, 19 S. W. 560; Railway Co. v. Beardsley, 30 South. (Miss.) 660; United States v. Green (C. C.) 98 Fed. 63; Maier v. Brock, 222 Mo. 74, 120 S. W. 1167, 133 Am. St. Rep. 513, 17 Ann. Cas. 673; Jackson v. Phalen, 237 Mo. 142, 140 S. W. 879; Gamble v. Rucker, 124 Tenn. 415, 137 S. W. 499. It will therefore be presumed that the trial court resolved this material issue in appellee's favor. At the request of appellant's counsel, the learned trial court filed his conclusions of law upon the facts found by the jury, and from his third conclusion it is affirmatively apparent that he did so resolve this issue.

[7] Appellee pleaded his title specially, and averred that he claimed under the heirs of Salvador Chavira. The premises belonged to the community estate of Salvador and Aniseta and the interest of Aniseta was in her own right, and not as an heir. Deed from Aniseta, however, was offered in evidence. Judgment was rendered in appellee's favor for an undivided one-half interest, the same being the interest acquired from the children and heirs of Salvador, and it was further ordered that he recover possession of the entire premises. By cross-assignment appellee contends that he should have recovered the entire title as well as exclusive possession. As we understand the correct rule, the owner of an undivided interest in lands as against a trespasser is entitled to the exclusive possession, and upon recovery of his undivided interest he is entitled to judgment further for such possession. We can conceive of no theory upon which judgment could properly be rendered in his favor for the complete title when, in fact, he is not the owner thereof. In certain cases cited by appellee there are expressions broad enough to support such a view, but they are regarded as being somewhat loose and inaccurate, and it is not believed that it was intended to hold that more should be permitted than recovery of the interest owned together with exclusive possession of the whole. Whatever may be the proper construction of these authorities, they are inapplicable here. Appellee having pleaded his title specially, he was by a well-defined rule confined and restricted to the title pleaded, and in the judgment he was therefore properly limited in his recovery to the one-half interest in the title acquired from the children and heirs, together with exclusive possession of the whole. In the cases cited no such question of pleading was involved, and they are therefore not in point, even if it be conceded that they are authority for the broad proposition that the owner of an undivided interest as against a trespasser can recover the entire title as well as exclusive possession.

The principle here recognized would not be applicable if the land had been patented. In such case the entire legal title would have been vested in Salvador, subject to the wife's equitable title to an undivided one-half interest, and the children and heirs of Salvador would have inherited the entire legal title. Patty v. Middleton, 82 Tex. 586, 17 S. W. 909; Woodburn v. Texas, etc., 153 S. W. 365. By their conveyance to Smith the legal title would have passed, and Rawls, as the vendee of Smith and holder of the complete legal title, should have recovered the entire title and possession of the whole, notwithstanding the state of his pleadings. But the legal title was still in the state, and under the deed from the heirs of Salvador the equitable title to an undivided one-half interest only passed.

The cross-assignment of error is therefore overruled, and the judgment is in all respects affirmed.